UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THE ANNUITY, PENSION, WELFARE,
TRAINING AND LABOR MANAGEMENT
COOPERATION TRUST FUNDS OF THE
INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 14-14B, AFL-CIO, BY
THEIR TRUSTEES EDWIN L. CHRISTIAN,
CHRISTOPHER T. CONFREY, JOHN CRONIN,
JOSEPH BYRNE, KENNETH KLEMENS, JR.,
JOHN F. O'HARE, DENISE M. RICHARDSON
and MICHAEL SALGO, and INTERNATIONAL
UNION OF OPERATING ENGINEERS LOCAL
14-14B, AFL-CIO, BY ITS BUSINESS
MANAGER EDWIN L. CHRISTIAN,

**REPORT AND RECOMMENDATION**

19-CV-2180 (ENV) (ST)

                           Plaintiffs,

-against-

CARLO LIZZA & SONS PAVING, INC.,

                           Defendant.
-------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

      The Annuity, Pension, Welfare, Training and Labor Management Cooperation Trust Funds of the International Union of Operating Engineers, Local 14-14B, AFL-CIO ("Local 14 Trust Funds"), represented by their trustees Edwin L. Christian, Christopher T. Confrey, John Cronin, Joseph Byrne, Kenneth Klemens, Jr., John F. O'Hare, Denise M. Richardson, and Michael Salgo (the "Trustees"), together with the International Union of Operating Engineers Local 14-14B ("Local 14") represented by its business manager Edwin L. Christian (collectively, "Plaintiffs"), commenced this action on April 15, 2019, against Carlo Lizza & Sons Paving, Inc. ("Carlo Lizza") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 *et seq.* *See* Compl., ECF No. 1. Plaintiffs allege that Carlo Lizza failed to make the required annuity, voluntary annuity, pension, welfare, and training benefit contribution payments owed to Plaintiffs under the terms of a collective bargaining agreement in violation of

1

section 515 of ERISA, 29 U.S.C. § 1145, and further allege that Carlo Lizza failed to make additional required fringe benefit contribution payments owed to Plaintiffs under the terms of the same collective bargaining agreement in violation of section 301 of the LMRA, 29 U.S.C. § 185. *See* Compl. ¶¶ 1, 27–30; Pls.' Mem. Supp. Def. J. ("Pls.' Mem."), ECF No. 14, at 6–7. Judge Eric N. Vitaliano referred Plaintiffs' Motion to me for a report and recommendation. *See* Docket Entry, June 7, 2019.

I respectfully recommend that Plaintiffs' Motion for Default Judgment be GRANTED in part and DENIED in part and damages awarded in the amount described herein.

### A. Factual Background

Local 14 is a labor organization chartered by the International Union of Operating Engineers and is responsible for representing its members for collective bargaining purposes in the New York City construction industry. Christian Aff., ECF No. 12 ¶¶ 2–3. Carlo Lizza is a New York corporation that performs paving and road building work. *See* Compl. ¶ 13; Pls.' Mem. at 3.

On September 1, 1999, Local 14 entered into an agreement with Carlo Lizza that it would be bound by a collective bargaining agreement ("CBA") entered into between Local 14 and the General Contractors Association of New York, Inc. (the "Local 14/GCA Agreement").[1] *See* Ex. B. to Steinberg Aff., ECF No. 13-2 (stating terms of the agreement between Carlo Lizza and Local 14); Exs. C-1 and C-2 (stating terms of the Local 14/GCA Agreement). The Local 14/GCA Agreement provides that employers, such as Carlo Lizza, are required to pay certain fringe benefit contributions for each hour worked by the employees. *See* Ex. C-1, ECF No. 13-3, at Art. XI-A, §§ 1–9 (setting forth terms of employer-mandated fringe benefit payments from

---

[1] The CBA is referenced in the complaint but was not actually attached to the complaint—instead, it was submitted to the Court with Plaintiffs' default judgment motion. *See* Exs. C-1 and C-2 to Steinberg Aff., ECF Nos. 13-3 & 13-4. Documents that are relied on and referred to in the complaint are considered incorporated by reference into the complaint and therefore properly before the court deciding a default judgment motion. *See Gesualdi v. Interstate Masonry Corp.*, No. 12-CV-0383 (NGG) (VMS), 2014 WL 1311709, at *3 (E.D.N.Y. Mar. 28, 2014) (collecting cases); *Cole v. John Wiley & Sons, Inc.*, No. 11-CV-2090 (DF), 2012 WL 3133520, at *1 (S.D.N.Y. Aug.1, 2012) ("While the [agreement] was not attached to [the complaint], but rather was supplied by [the defendants] in connection with their motion, [the plaintiff's] pleading refers to and relies on the agreement's terms and effect . . . , and the document is therefore appropriately deemed incorporated by reference in [the plaintiff's] pleading.").

July 1, 2010 to June 30, 2014); Ex. C-2, ECF No. 13-4, Art. XI-A, §§ 1–9 (setting forth same terms from July 1, 2014 to June 30, 2018). Pursuant to the terms of the respective CBA, an employer was required to pay, for each hour worked by an employee, to the Welfare Fund, Pension Fund, Annuity Voluntary Fund, Annuity Fund, Training and Retraining Fund, and Defense Fund; the employer was also required to pay into the dues assessment for the labor union. *See* Ex. C-1, ECF No. 13-3, at Art. XI-A, §§ 1–9; Ex. C-2, ECF No. 13-4, Art. XI-A, §§ 1–9.

Carlo Lizza consented to an audit of its records to determine whether it had made the required contributions to the Local 14 Trust Funds and Local 14 consistent with its obligations under the CBA for the period of March 1, 2013 through June 30, 2017 (the "audit period"). Compl. ¶ 21; *see also* Ex. J. to Steinberg Aff., ECF No. 13-11 (setting forth the conclusions of the audit). Following the audit, a report was created that suggested that Carlo Lizza had failed to make the obligatory payments under the terms of the contract for the entirety of the audit period. Compl. ¶ 22; *see* Audit Report, ECF No. 13-11.

Plaintiffs timely filed the complaint on April 15, 2019, see ECF No. 1, and then filed proof of service of the Summons and Complaint upon Carlo Lizza on May 6, 2019. *See* Summons Returned Executed, ECF No. 5. When Carlo Lizza failed to appear or otherwise defend in response to Plaintiffs' action, Plaintiffs requested the entry of a Certificate of Default against Carlo Lizza. *See* ECF No. 7. The Clerk of Court entered default on May 31, 2019. *See* ECF No. 8. Plaintiffs now move for default judgment.

### B. Applicable Law

A defending party who fails to adequately respond to a complaint risks default. Courts are directed to engage in a two-step process for the entry of a judgment against a party who fails to defend: first, the Clerk of Court enters default, and second, a judgment is entered on the default. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). Rule 55(a) of the Federal Rule of Civil Procedure sets forth the first step as follows:

> When a party against whom a judgment for affirmative relief is sought has failed

3

>to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a). While a "typical" default is entered "because a defendant failed to file a timely answer[,] . . . a district court is also empowered to enter a default against a defendant that has failed to 'otherwise defend.'" *Mickalis Pawn Shop*, 645 F.3d at 129 (citing Fed. R. Civ. P. 55(a)) (other citation and bracket omitted).

The second step is the entry of default judgment. In this step, the court "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled . . . ." *Id.* at 128. Following the clerk's entry of default, a court considers as true all factual allegations in the complaint relating to liability. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). But the court still must determine whether the factual allegations, taken as true, establish the defendant's liability as a matter of law. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (following entry of default, the court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law"). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

By entry of default, the defaulting party does not concede liability, as stated above, nor does the defaulting party admit the plaintiff's factual allegations with respect to the amount of damages. *See Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234. After finding liability, a court must conduct an inquiry to "ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted); *see United States v. Myers*, 236 F. Supp. 3d 702, 709 (E.D.N.Y. 2017) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical

computation.") (quoting *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). "A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *J & J Sports Prods. v. Emily Bar Rest. Inc.*, No. 15-CV-6499 (RJD), 2016 WL 6495366, at *2 (Sept. 27, 2016) (citing Fed. R. Civ. P. 55(b)(2) and *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991)), *adopted by*, 2016 WL 6495526 (E.D.N.Y. Nov. 2, 2016).

### C. Analysis

#### 1. Liability

Local 14 is a labor organization as defined in section 2 of the LMRA, 29 U.S.C. § 152. Compl. ¶ 11. Plaintiffs allege that each of the Local 14 Funds were created and currently exist, with the exception that the Complaint fails to allege anything with respect to the Annuity Voluntary Trust Fund. *See* Compl. Local 14 Annuity and Pension Funds are employee pension benefit plans within the meaning of section 3(2) of ERISA, 29 U.S.C. § 1002(2) and established for the purpose of providing retirement income to eligible participants. Compl. ¶ 7. Local 14 Welfare and Training Funds are employee welfare benefit plans within the meaning of section 3(1) of ERISA, 29 U.S.C. § 1002(1) and established for the purpose of providing medical and skill improvement benefits to eligible participants. Compl. ¶ 8. Local 14 Annuity, Pension, Welfare & Training Funds are multi-employer/employee benefit plans within the meaning of sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and (37). Compl. ¶ 9. Local 14 Labor Management Cooperation Trust Fund is a labor management cooperation trust fund as defined under the Labor-Management Cooperation Act of 1978, 29 U.S.C. § 186(c)(9) and section 501(c)(5) of the Internal Revenue Code. Compl. ¶ 10.

##### a. ERISA

The factual allegations in Plaintiffs' Complaint establish Carlo Lizza's liability under section 515 of ERISA and section 301 of the LMRA. Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions

5

in accordance with the terms and conditions of such plan or such agreement. 29 U.S.C. § 1145. Under the terms of the CBA, Carlo Lizza was obligated to make contributions to the Funds based on the number of hours Plaintiffs' worked. *See* Compl. ¶ 18; Christian Aff., ECF No. 12 ¶ 5; Ex. C-1, ECF No. 13-3, at Art. XI-A, §§ 1–9; Ex. C-2, ECF No. 13-4, Art. XI-A, §§ 1–9. Plaintiffs allege that Carlo Lizza failed to make these contributions. Compl. ¶¶ 22–24, 27–28. Carlo Lizza's failure to make the required contributions to the Funds constitutes a violation of section 515 of ERISA.

      b. *Voluntary Annuity Fund*

Despite this Court's finding that Carlo Lizza is liable for violations for failing to make contributions to ERISA funds, Plaintiffs do not have standing to recover unpaid sums to the Annuity Voluntary Fund. The CBA mandates that contributions to this fund "shall be cashed by Locals No. 14 and 14B Annuity Voluntary Fund." CBA art. XI-A § 4, ECF No. 13-3; *accord* CBA art. XI-A § 4, ECF No. 13-4. As such, only the Annuity Voluntary Fund itself or an assignee of the Fund's claims for delinquent contributions would possess standing to collect delinquent contributions on behalf of the fund. *See Annuity, Pension, Welfare, Training & Labor Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Engineers Local 14-14B v. BKS-NY*, LLC, No. 18-CV-0256 (LDH) (VMS), 2018 WL 4522103, at *4 (E.D.N.Y. Aug. 6, 2018) (citing cases). The Annuity Voluntary Fund is not a party to this case, nor have Plaintiffs alleged in the Complaint that they are acting as an assignee of the Annuity Voluntary Fund. *See* Compl.

In two recent cases involving the same plaintiffs and the same collective bargaining agreement, courts in this District have found that Local 14 did not have standing to collect unpaid sums from the Annuity Voluntary Fund. *See id.*; *Annuity, Pension, Welfare, Training & Labor Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Engineers, Local 14-14B, AFL-CIO by Christian v. Coastal Envtl. Grp. Inc.*, No. 18-CV-5773 (AMD) (ST), 2019 WL 4603805, at *8 (Sept. 5, 2019), *adopted by*, 2019 WL 4602851 (E.D.N.Y. Sept. 23, 2019). Like in those cases, this Court finds that Plaintiffs have failed to demonstrate that any named Plaintiff in this action has standing to collect unpaid sums to the Annuity Voluntary Fund. Therefore, this Court

6

respectfully recommends that Plaintiffs' motion for default judgment with respect to Defendant's failure to remit contributions to the Annuity Voluntary Fund be denied without prejudice.

  *c. LMRA*

  Section 301(a) of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Under section 301 of the LMRA, an employer may be held liable for failing to remit dues or contributions to a labor organization as required under the terms of a CBA. *See, e.g.*, *BKS-NY*, 2018 WL 4522103, at *4. Plaintiffs allege that Carlo Lizza failed to remit dues and contributions to Local 14 and the Local 14 Labor Management Cooperation Trust Fund. Plaintiffs' failure to make the required contributions constitutes a breach of the CBA, and thus, Carlo Lizza is liable under section 301 of the LMRA.

  *2. Damages*

  As noted above, "a party's default is deemed to constitute a concession of all well pleaded allegations of liability" but "is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Thus, even after determining the liability of a defaulting party, a Court considering a motion for default judgment is required to "ascertain the amount of damages with reasonable certainty" through its own analysis rather than merely relying upon the movant's unopposed stipulation as to what these damages ought to be. *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

  Although a Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence," Fed. R. Civ. P. 55(b)(2), this rule "allows but does not require the district judge to conduct a hearing" in the event that she finds one unnecessary, as when "detailed affidavits and documentary evidence" are available to support the Court's determination. *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993) (citing *Action*

7

*S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) & *Fustok v. Conti-Commodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

Plaintiffs support their application for damages with several documents and exhibits, including: an affidavit from Lisa Madieras ("Madieras Aff."), a payroll audit manager whose accounting firm Schultheis & Panettieri, LLP was retained by Plaintiffs Local 14 Trust Funds to conduct audits of contributing employer's payroll records, ECF No. 11; an affidavit from Marlene Monterroso, the funds manager for the Local 14 Trust Funds ("Monterroso Aff."), ECF No. 10; an affidavit from James Steinberg, counsel for Plaintiffs ("Steinberg Aff."), ECF No. 13; the CBAs, ECF Nos. 13-3 & 13-4; the Local 14/GCA Agreement, ECF No. 13-2; the audit report, ECF No. 13-11; a copy of the wage scales, which lists the benefits per hour paid, ECF No. 13-12; an invoice for Plaintiffs' process server, ECF No. 13-13; and the time records for Plaintiffs' counsel, ECF No. 13-14. The Court finds that these affidavits and supporting documents provide sufficiently detailed information upon which to establish an appropriate calculation of damages.

Pursuant to section 502 of ERISA, when judgment is entered in favor of an ERISA plan to recover unpaid contributions owed to it under the terms of a collective bargaining agreement, that plan is entitled to an award consisting of:

(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of—
  (i) interest on the unpaid contributions, or
  (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). In contrast, although a successful plaintiff suing on behalf of a labor organization for violating labor contracts pursuant to section 301 of the LMRA is also entitled to an award of compensatory money damages, "a plaintiff bringing a claim under Section 301 of

8

the LMRA may recover only those damages provided for in the collective bargaining agreement and trust agreements." *Finkel v. Colony Elec. Co.*, No. 10-CV-2240 (FB) (LB), 2010 WL 5665042, at *4 (Nov. 8, 2010), *adopted by*, 2011 WL 346738 (E.D.N.Y. Feb. 1, 2011).

Plaintiffs argue that they are entitled to an award of damages consisting of: (1) $106,017.50 in unpaid ERISA contributions; (2) $7,228.88 in non-ERISA contributions; (3) $22,760.71 in prejudgment interest on the unpaid ERISA contributions calculated at the rate of 6.0% on the principal sum of $106,017.50 through the date of January 3, 2019; (4) an additional amount of prejudgment interest on the unpaid ERISA contributions calculated at the rate of 6.0% on the principal sum of $106,017.50 from January 4, 2019 through the date of final judgment as calculated by the Clerk of the Court; (5) prejudgment interest on the unpaid non-ERISA contributions calculated at a rate of 9.0% on the principal sum of $7,228.88 from May 1, 2015; (6) statutory damages, pursuant to 29 U.S.C. § 1132(g)(2)(C), equal to that of the interest awarded; (7) $2,850.00 in attorneys' fees; and (8) $599.00 for the costs of filing the action.

    a. *Unpaid ERISA Dues*

As noted, where trustees of an ERISA plan show liability for unpaid contributions under section 515 of ERISA, 29 U.S.C. § 1145, the trustees are entitled to recover the full amount of unpaid contributions owed to it by the employer. 29 U.S.C. § 1132(g)(2)(A). Thus, in such cases plaintiffs are allowed to recover damages for all and only those claims upon which they have successfully established the defendants' liability to them. In the present case, Plaintiffs' audit of Defendant's records establishes that Defendant failed to pay a cumulative sum of $106,017.50 in ERISA contributions owed to the ERISA Funds under the CBA. *See* Audit Report, ECF No. 13-11. As discussed above, although this Court has determined that Defendant is liable to Plaintiffs Local 14 Trust Funds for unpaid contributions to *most* of the ERISA Funds, Plaintiffs lack standing to sue on behalf of the Annuity Voluntary Fund, and hence cannot recover unpaid contributions owed to this Fund.

The total sum owed to Plaintiffs in ERISA dues is $106,017.50—of which $16,857 is owed to the Annuity Voluntary Fund. *See* Audit Report, ECF No. 13-11. The difference in

these two amounts is $89,160.50. This Court respectfully recommends that the District Court grant damages reimbursing Plaintiffs Local 14 Trust Funds for Defendant's unpaid ERISA contributions in the amount of $89,160.50.

### b. *Prejudgment Interest on Unpaid ERISA Dues Through Date of Judgment*

Plaintiffs Local 14 Trust Funds seek prejudgment interest on unpaid ERISA dues pursuant to section 502 of ERISA. 29 U.S.C. § 1132(g)(2)(B). ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986." 29 U.S.C. § 1132(g)(2). Each of the ERISA Funds Trust Agreements independently provides that interest on unpaid ERISA dues is to accrue at a rate of 6% in the event an employer defaults in making payments. *See* Annuity Fund Trust Agreement, ECF No. 13-5, § 4.7(2); Pension Fund Trust Agreement, ECF No. 13-6, art. VII, § 2; Welfare Fund Trust Agreement, ECF No. 13-7, art. VII, § 2; Training Fund Trust Agreement, ECF No. 13-8, § 4.7(2). Moreover, given that the Pension Fund Trust Agreement and Welfare Fund Trust Agreement both provide that interest is to accrue in such cases on an annual basis, this Court accepts Plaintiffs' submission that 6.0% interest ought to be calculated on an annual basis upon unpaid contributions due to any of the four ERISA Funds. *See* Pls.' Mem. at 10; Madeiras Aff. ¶ 6, ECF No. 11.

This Court has reviewed and accepts the methodology for calculation of interest used by Plaintiffs' auditor described in the Madeiras Affidavit. *See* Madeiras Aff. ¶¶ 6–7. As explained there, interest is to be assessed separately at the end of each four-month audit period on each sum of unpaid dues accrued to each ERISA Fund over the course of that audit period using the following formula: [Number of days from the end of the given audit period until the date of total interest accrual] x [interest rate (6%)] / [365 days] x [principal amount owed in unpaid contributions to the given ERISA Fund accumulated over the given audit period]. *Id.* Using the chart below, that formula is expressed more simply as [daily interest] x [days late] = [interest owed].

10

| Period | Unpaid Contributions | Daily Interest (C x .06 Interest Rate) ÷ 365 Days/Year | Days Late (from last day of Period through 3/11/2020) | Interest Owed (as of 3/11/2020) |
|---|---|---|---|---|
| 11 | $2,922.15 | $0.48[2] | 2447 | $1,175.42 |
| 12 | $13,084.15 | $2.15 | 2324 | $4,998.50 |
| 13 | $4,975.75 | $0.82 | 2204 | $1,802.72 |
| 14 | $5,585.90 | $0.92 | 2082 | $1,911.76 |
| 15 | $12,549.10 | $2.06 | 1959 | $4,041.15 |
| 16 | $3,828.00 | $0.63 | 1839 | $1,157.21 |
| 17 | $4,705.30 | $0.77 | 1717 | $1,328.05 |
| 18 | $14,379.20 | $2.36 | 1594 | $3,767.74 |
| 19 | $5,019.15 | $0.83 | 1474 | $1,216.15 |
| 21 | $10,131.80 | $1.67 | 1228 | $2,045.24 |
| 22 | $4,311.60 | $0.71 | 1108 | $785.30 |
| 23 | $7,668.40 | $1.26 | 986 | $1,242.91 |
| Totals | $89,160.50 | $14.66 | -- | $25,472.16 |

Using this formula and setting the total interest accrual as of today, March 11, 2020, this Court finds that Defendant owes Plaintiffs a total of $25,472.16 in prejudgment interest on unpaid ERISA contributions to date. This Court further finds that the aforementioned total

---

[2] Although the numbers presented in this table are rounded to the nearest hundredth for clarity, the Court computed the amounts owed using unrounded values. *See Bedasie v. Mr. Z Towing, Inc.*, No. 13-CV-5453 (CLP), 2017 WL 1135727, at *51 n.71 (E.D.N.Y. Mar. 24, 2017) (noting that while "[f]or purposes of clarity, the Court has represented the per diem interest amount as rounded to the nearest hundredth," the Court would use "un-rounded values in its calculations" so as to "calculate a more accurate amount for total interest").

11

should increase at a rate of approximately $14.66 for each additional day between today and the date on which the final judgment is entered on this action.

In light of these calculations, this Court respectfully recommends that the District Court grant Plaintiffs Local 14 Trust Funds a total prejudgment interest award of $25,472.16 in ERISA dues as of today, March 11, 2020, plus an additional sum of approximately $14.66 per day for each additional day until judgment is entered.

      *c. Statutory Damages on Unpaid ERISA Dues*

Plaintiffs Local 14 Trust Funds additionally seek statutory damages on unpaid ERISA dues pursuant to Section 502 of ERISA. 29 U.S.C. § 1132(g)(2)(C). Pursuant to section 502, a plaintiff collecting unpaid ERISA dues is entitled to statutory damages in "an amount equal to the greater of interest on the unpaid contributions, or liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount [of unpaid dues] determined by the court." *Id*. As explained above, this Court has found that Defendant is liable to Plaintiffs Local 14 Trust Funds for an amount of $89,160.50 in unpaid ERISA dues, as well as cumulative prejudgment interest on Plaintiffs' ERISA claims amount to $25,472.16 as of today, March 11, 2020. Although neither the CBA nor the Trust Agreements provide a formula for calculating liquidated damages in an action for unpaid ERISA dues, such damages would at most be equivalent to 20.0% of the principal sum of dues owed, which in this case comes out to $17,832.10. Given that the amount of prejudgment interest accrued on Plaintiffs' ERISA claims already exceeds the maximum amount that liquidated damages could reach on this claim, statutory damages in this case must be awarded at an amount equal to prejudgment interest. This Court thus finds it appropriate to follow Plaintiffs' suggestion of awarding statutory damages of an amount equivalent to the total prejudgment interest awarded to Plaintiffs on this claim. *See* Pls.' Mem. at 11.

This Court respectfully recommends that the District Court grant Plaintiffs Local 14 Trust Funds an award of statutory damages equivalent to the sum of prejudgment interest on Defendant's unpaid ERISA contributions in the amount of $25,472.16.

      d.  *Unpaid Non-ERISA Dues*

Plaintiffs also seek damages for Carlo Lizza's failure to contribute to non-ERISA Funds. Plaintiffs allege the following amounts are owed in non-ERISA contributions:

| | |
|---|---|
| Union Assessment/Dues Checkoff | $ 6,965.58 |
| Defense Assessment/Defense Fund Contribution | $   187.30 |
| Labor Management Cooperation Trust Fund | $     76.00 |
| Subtotals | $ 7,228.88 |

Pls.' Mem. at 15 (citing Audit Report, ECF No. 13-11). Plaintiffs allege that, "[p]ursuant to the terms of the [CBA], Defendant CARLO LIZZA [was] obligated to remit . . . labor management cooperation trust fund contributions . . . ." Compl. ¶ 18. As previously stated, a plaintiff "bringing a claim under Section 301 of the LMRA may recover only those damages provided for in the collective bargaining agreement and trust agreements." *Finkel*, 2010 WL 5665042, at *4.

Although the CBA mandates that the employer make payments to the Union Assessment/Dues Checkoff and Defense Assessment/Defense Fund Contribution, there is no provision in the CBA that mandates payments to the Labor Management Cooperation Trust (LMCT) Fund. *See* CBA, art. XI-A, § 7 (mandating contributions to dues checkoff); CBA, art. XI-A, § 8 (mandating contributions to defense fund). Contrary to Plaintiffs' allegation, the LMCT Fund is not mentioned at all in the CBA. *See* CBA, art. XI-A §§ 1–8 (naming each of the funds for which Plaintiffs seeks damages in this action except for the LMCT Fund). Plaintiffs have therefore not established liability with respect to the LMCT Fund because they have not shown that Carlo Lizza was obligated to make such payments. *See BKS-NY*, 2018 WL 4522103, at *14–15 (addressing precisely this issue with respect to the same plaintiffs and the same collective bargaining agreement, and finding that "[t]he Court cannot credit Plaintiffs' allegation that Defendant had an obligation under the CBA to make LMCT Fund contributions when the allegation is inconsistent with the CBA itself . . ."); *see also Coastal Envtl. Grp. Inc.*, 2019 WL 4603805, at *9 n.7 (finding the same, in the context of a dispute involving the same plaintiffs and the same collective bargaining agreement).

Accordingly, this Court recommends that the District Court deny Plaintiffs' Motion with respect to liability for unpaid LMCT contributions and grant Plaintiffs' Motion with respect to liability for unpaid Union Assessment/Dues Checkoff Funds and unpaid Defense Assessment/Defense Fund Contribution Funds.

The audit report indicates that a total of $7,228.88 in non-ERISA dues owed to the Plaintiffs, of which the amount due to the LMCT Fund only comprises $76.00. *See* Audit Report, ECF No. 13-11, at 2. As stated above, this Court finds that Plaintiffs are not liable for unpaid sums to the LMCT Fund. This Court finds that the appropriate amount of damages owed for non-ERISA Funds is the difference between the total amount owed and the amount owed to the LMCT Fund, which is $7,152.88. As such, this Court recommends that the District Court award damages to Plaintiffs in the amount of $7,152.88 for unpaid non-ERISA Funds.

   e. *Prejudgment Interest on Non-ERISA Funds*

Plaintiffs also seek an award of interest on the unpaid non-ERISA dues. Pls.' Mem. at 15. In the Second Circuit, district courts have the discretion to decide whether to award prejudgment interest for LMRA claims. *See Lodges 743 & 1746, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Aircraft Corp.*, 534 F.2d 422, 446 (2d Cir. 1975); *see also Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 162 (E.D.N.Y. 2008). The CBA does not prescribe an interest rate for unpaid non-ERISA dues in the event that an employer defaults. Plaintiffs ask this Court to award interest a rate of 9% in accordance with section 5004 of the New York Civil Practice Law and Rules. *See* Pls.' Mem. at 15; *see also* N.Y. C.P.L.R. § 5004. "In awarding interest, a court may look to state law to determine an appropriate rate." *Bricklayers Ins. & Welfare Fund v. Primo Brick, Inc.*, No. 11-CV-5742 (FB) (LB), 2013 WL 2120338, at *5 (Apr. 3, 2013) (citation omitted), *adopted by*, 2013 WL 2120318 (E.D.N.Y. May 15, 2013). Due to the fact that Plaintiffs' Motion is unopposed and in accordance with Second Circuit precedent, this Court finds that a 9% interest rate is appropriate. *See Mason Tenders Dist. Council Welfare Fund v. Kafka Constr., Inc.*, No. 16-CV-9911 (KPF), 2018 WL 2138621, at *5 (S.D.N.Y. May 9, 2018) ("With respect to awards under § 301,

14

'[b]ecause the LMRA is silent with respect to a prejudgment interest rate, the 'common practice' among courts within the Second Circuit is to grant interest at a rate of 9%, the rate of prejudgment interest under New York State law.'" (citing cases)).

Plaintiffs ask the Court to calculate the amount owed in prejudgment interest using May 1, 2015 as a "single reasonable intermediate date." *See* N.Y. C.P.L.R. § 5001(b) ("Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."). Plaintiffs' unpaid sums accrued from the period of March 1, 2013 through June 30, 2017. *See* Audit Report, ECF No. 13-11, at 2. As this period is 1582 days, this Court agrees with Plaintiffs that the chronological mid-point of this period is May 1, 2015, and uses this date for calculating the interest owed.

In light of these considerations and in accordance with New York law, this Court respectfully recommends that Plaintiffs be awarded prejudgment interest on Carlo Lizza's unpaid non-ERISA dues at a rate of 9.0% simple annual rate on the total $7,152.78 principal sum from the midpoint date of May 1, 2015 until the date that a judgment is entered. This Court respectfully recommends that the District Court enter a prejudgment interest award in the amount of $3,132.33 as of today, March 11, 2020, which should increase at a rate of approximately $1.76 per day until the District Court enters a judgment on this action.[3]

    *f. Attorneys' Fees*

Plaintiffs' counsel, James M. Steinberg, seeks attorneys' fees in the amount of $2,850.00 for 7.5 hours of work performed at an hourly rate of $380.00. *See* Pls.' Mem. at 11. Mr. Steinberg states that he has billed his services at a rate of $380.00 per hour since January 1,

---

[3] The figure was calculated using the following formula: [principal amount * interest rate ÷ number of days in a year * number of days late = amount of interest owed] or [7152.78 * .09 ÷ 365 * 1776 = $3,132.33]. Like before, all figures were calculated using unrounded numbers.

15

2018, and he has risen to the level of partner after practicing in the field of labor law since 1995. *See* Steinberg Aff. ¶ 14.[4]

Upon finding that an employer has defaulted on its obligation to make contributions, an award of reasonable attorneys' fees is mandatory under ERISA. *See* 29 U.S.C. § 1132(g)(2)(D) (stating that, in the event a court finds liability under section 1145, "the court shall award the plan . . . reasonable attorney's fees and costs of the action . . ."). Plaintiffs' counsel submitted an affidavit and a time sheet in support of his request. *See* Steinberg Aff., ECF No. 13 ¶¶ 14–16; Ex. M to Steinberg Aff. ("Time Sheet"), ECF No. 13-14.

Plaintiffs' counsel cites to a number of cases in support of his request. Counsel cites to recent cases stating that partners are awarded attorneys' fees of $300.00 to $450.00 per hour. *See* Pls.' Mem. at 12 (citing *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension and Welfare Funds v. Penco United, LLC*, 13-CV-4745 (SJF) (AKT), 2015 WL 1650960, at *2 (Apr. 14, 2015 E.D.N.Y.) & *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension & Welfare Funds v. Sanders Constr., Inc.*, No. 13-CV-5102 (JFB) (ARL), 2015 WL 1608039, at *4 (E.D.N.Y. Apr. 10, 2015)). Counsel also cites to recent cases arising from his own representation of the Local 14 Trust Funds in which courts have found hourly rates ranging from $360.00 to $380.00 to be reasonable. *See* Pls.' Mem. at 13 (citing *BKS-NY*, 2018 WL 4522103, at *11 (awarding attorneys' fees at $380 per hour) & *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Engineers Local 14-14B, AFL-CIO v. NAMOW, Inc.*, No. 17-CV-1469 (ARR) (SJB), 2018 WL 1440545, at *8 (Feb. 28, 2018) (awarding attorneys' fees at $370 per

---

[4] This Court recognizes that the Trust Fund Agreements provide for an award of attorneys' fees that is equal to 20 percent of the total damages awarded. *See* Annuity Fund Trust Agreement, ECF No. 13-5, art. 4 § 7 ¶ 2; Pension Fund Trust Agreement, ECF No. 13-6, art. VII § 2; Welfare Fund Trust Agreement, ECF No. 13-7, art. VII § 2; Training Fund Trust Agreement, ECF No. 13-8, art. 4 § 7 ¶ 2. In this case, those provisions would have actually afforded Plaintiffs' counsel a much larger award than counsel requested—instead of the $2,850 that was requested, the Trust Fund Agreements would have provided for an award in the amount of $29,245. As this Court discussed in *Coastal Environmental Group*, however, attorneys' fees "cannot be *inflated* by virtue of . . . provisions" in a Trust Fund Agreement. *See Coastal Envtl. Grp. Inc.*, 2019 WL 4603805, at *14 (citing cases).

hour), *adopted by*, 2018 WL 1440542 (E.D.N.Y. Mar. 22, 2018) & *Annuity, Pension, Welfare & Training Funds of I.U.O.E. Local 14-14 B, AFL-CIO by Christian v. Falcon Steel Co.*, No. 16-CV-0020 (RRM), 2016 WL 8465987, at *5 (Apr. 13, 2016) (awarding attorneys' fees at $360 per hour), *adopted by*, 2017 WL 945851 (E.D.N.Y. Mar. 9, 2017)). In addition to the caselaw cited by counsel, this Court recently awarded Mr. Steinberg attorneys' fees in an amount that is identical to that requested in this case—namely, $2,850.00 for 7.5 hours of work at an hourly rate of $380.00 per hour. *See Coastal Envtl. Grp. Inc.*, 2019 WL 4603805, at *11–13 (awarding identical attorneys' fees in an ERISA case involving the same counsel, identical plaintiffs, and substantially similar issues). In light of the substantial caselaw supporting the request, as well as this Court's finding that there is no persuasive reason to depart from this Court's recent award in *Coastal Environmental Group*, this Court finds that Mr. Steinberg's request for attorneys' fees is reasonable.

It is therefore respectfully recommended that the District Court grant Plaintiffs' request for attorneys' fees and award counsel $2,850.00 for his work on this matter.

### g. Costs and Fees

Finally, Plaintiffs request an award of $599.00 to cover the costs of filing and service of process. Pls.' Mem. at 13. In support, Plaintiffs submit an invoice for service of process and ask the Court to take notice of its filing fee. Pls.' Mem. at 13; *see* Ex. L to Steinberg Aff. (Invoice for Service of Process), ECF No. 13-13. Section 502 of ERISA allows a successful litigant to collect the "costs of the action." 29 U.S.C. § 1132(g)(2)(D); *see NAMOW*, 2018 WL 1440545, at *8 (awarding costs of filing and service of process in ERISA case).

Plaintiffs' invoice establishes that $199.00 was paid for service of process. Ex. L to Steinberg Aff., ECF No. 13-13. This Court takes judicial notice of its own $400 filing fee. *See* ECF No. 1 (stating that Plaintiffs paid a $400 filing fee). Thus, this Court respectfully recommends that Plaintiffs be awarded $599.00 in costs.

### D. Conclusion

This Court respectfully recommends that Plaintiffs' Motion be GRANTED in part and

17

DENIED in part. This Court recommends entering judgment against Carlo Lizza and awarding damages in the following amounts:

(1) $89,160.50 in unpaid ERISA contributions;

(2) $25,472.16 in prejudgment interest on unpaid ERISA contributions as of today, March 11, 2020;

(3) $25,472.16 in statutory damages on unpaid ERISA dues, which is equal to the amount of interest on unpaid ERISA contributions as of March 11, 2020;

(4) $7,152.88 in unpaid non-ERISA contributions;

(5) $3,132.33 in prejudgment interest on non-ERISA dues as of March 11, 2020;

(6) $2,850.00 in attorneys' fees; and

(7) $599.00 in costs.

Plaintiffs' counsel is directed to serve a copy of this Report and Recommendation on Defendant at its last known address and file proof of service with the Court within five (5) business days.

### E. Objections to this Report and Recommendation

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
       March 11, 2020